UNITED STATES of America,

v.

Travis Edward GROSS, Defendant.

Crim. Action No. 13–0268–WS.

United States District Court,
S.D. Alabama,
Southern Division.

Signed Nov. 20, 2014.

Deborah A. Griffin, U.S. Attorney's Office, Mobile, AL, for USA.

## ORDER

WILLIAM H. STEELE, Chief Judge.

This matter is before the Court on the government's motion for pretrial ruling on

scienter requirement. (Doc. 56). The defendant has filed a response and the government a reply, (Docs. 67, 72),[1] and the motion is ripe for resolution.[2]

 Counts Two and Three of the indictment involve an alleged controlled substance analogue ("CSA"), specifically, XLR11. The government's motion is limited to these two counts. The instant motion asks the Court to rule that, in order to obtain a conviction under Counts Two and Three, the government need not prove that the defendant knew XLR11 was a CSA. The answer to that question depends on an analysis of the relevant statutes.

"A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813.[3] That is, to obtain a conviction based on a CSA, the government must prove the elements of a controlled substance crime. The Court therefore looks to the elements of the offenses with which the defendant is charged and, specifically, to whether they contain a requirement that the government prove the defendant knew the substance at issue was a controlled substance.

Count Two charges that the defendant violated 21 U.S.C. § 846 by conspiring to distribute, and to possess with intent to distribute, XLR11. (Doc. 1 at 12). "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. The underlying offense is found in Section 841(a): "[I]t shall be unlawful for any person knowingly or intentionally ... to ... distribute ... or. ... possess with intent to ... distribute ... a controlled substance." *Id.* § 841(a)(1).

Count Three charges that the defendant violated 21 U.S.C. § 963 by conspiring to import XLR11 into the United States. (Doc. 1 at 13). "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 963. The underlying offense is found in Section 952(a): "It shall be unlawful to import ... into the United States from any place outside thereof, any con-

---

1. The response was filed jointly by the two defendants, but one of them has since pleaded guilty.

·2. The government's unopposed motion for additional time to file the instant motion, (Doc. 44), is **granted.**

3. Congress has defined "CSA" as follows:

Except as provided in subparagraph (C) [which does not apply here], the term "controlled substance analogue" means a substance—

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; [and]

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). Some courts refer to Sections 813 and 802(32)(A) collectively as the "Analogue Act," and the Court employs that terminology herein.

trolled substance in schedule I or II...." *Id.* § 952(a).

■ "The § 841(a) offense is complete once the person commits the proscribed act and knows that the substance is a 'controlled substance.'" *United States v. Sanders,* 668 F.3d 1298, 1309 (11th Cir. 2012); *accord United States v. Gomez,* 905 F.2d 1513, 1514 (11th Cir.1990) ("[I]t is well-settled that to sustain a conviction for possession with intent to distribute a controlled substance, it need not be proved that the defendant had knowledge of the particular drug involved, as long as he knew he was dealing with a controlled substance."); *United States v. Mejia,* 97 F.3d 1391, 1392–93 (11th Cir.1996) (*Gomez* "held that, to sustain a defendant's conviction for possession with intent to distribute a controlled substance, the government ... did need to prove that he knew he was dealing with a controlled substance") (emphasis omitted).[4]

What is true for the substantive offense under Section 841(a) is also true for a conspiracy to commit the substantive offense under Section 846. *Sanders,* 668 F.3d at 1311 ("Because the indictment charges generic, 'controlled substance' violations of §§ 841(a) and 846, the district court correctly instructed the jury that

Sanders had to know only that he was conspiring to distribute, and possess with intent to distribute, any controlled substance."); *accord United States v. Scott,* 579 Fed.Appx. 930, 933–34 (11th Cir.2014); *United States v. Granda,* 346 Fed.Appx. 524, 526 (11th Cir.2009) ("To support a conspiracy conviction under § 841[sic], ... it is not necessary that the government prove that the defendant knew that he was involved with cocaine, but only that the defendant had knowledge that he was dealing with a controlled substance.").[5]

■ And what is true under Sections 841(a) and 846 is also true under Sections 952(a) and 963. "Although knowledge that the substance imported is a particular narcotic need not be proved, 21 U.S.C. 952(a) is a 'specific intent' statute and requires knowledge that such substance is a controlled substance." *United States v. Restrepo–Granda,* 575 F.2d 524, 527 (5th Cir. 1978); *accord United States v. Zapata,* 497 F.2d 95, 98 n. 7 (5th Cir.1974) (Section 952(a) maintains the requirement of its predecessor "that the defendant ... had knowledge that the substance he was importing was a narcotic substance"); *United States v. Peart,* 888 F.2d 101, 104 n. 2 (11th Cir.1989) ("The 28 U.S.C. § 952(a)

---

4. The law is the same elsewhere. *E.g., Sarmientos v. Holder,* 742 F.3d 624, 629 n. 33 (5th Cir.2014); *United States v. Ali,* 735 F.3d 176, 186–87 (4th Cir.2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 1357, 188 L.Ed.2d 357 (2014); *United States v. Mire,* 725 F.3d 665, 679 (7th Cir.2013); *United States v. Davis,* 690 F.3d 127, 131 (2nd Cir.2012); *United States v. Jones,* 600 F.3d 985, 990 (8th Cir. 2010); *United States v. De La Torre,* 599 F.3d 1198, 1204 (10th Cir.2010); *United States v. Caseer,* 399 F.3d 828, 842 (6th Cir.2005).

5. The principle is commonly observed. *E.g., United States v. Salinas,* 763 F.3d 869, 877 (7th Cir.2014); *United States v. Anderson,* 747 F.3d 51, 61 (2nd Cir.), *cert. denied sub nom. Hakimi v. United States,* —— U.S. ——, 135

S.Ct. 122, 190 L.Ed.2d 93 (2014); *United States v. Anaya,* 727 F.3d 1043, 1051 (10th Cir.2013), *cert. denied,* —— U.S. ——, 135 S.Ct. 419, 190 L.Ed.2d 304 (2014); *United States v. Burgos,* 703 F.3d 1, 10 (1st Cir.2012); *United States v. Boria,* 592 F.3d 476, 481 (3rd Cir.2010); *United States v. Patino–Prado,* 533 F.3d 304, 311 (5th Cir.2008). As the Second Circuit has explained, "since the government cannot establish the substantive § 841(a)(1) offenses ... without proving that the defendant knew he was dealing with a controlled substance, it likewise cannot establish a § 846 conspiracy ... without proving, inter alia, that the defendant knew that the conspiracy involved a controlled substance." *U.S. v. Torres,* 604 F.3d 58, 66 (2d Cir.2010).

charge requires proof that the defendant had knowledge that he was importing a controlled substance."); *United States v. Leavitt,* 878 F.2d 1329, 1337 (11th Cir. 1989) (same); *United States v. Lewis,* 676 F.2d 508, 512 (11th Cir.1982) ("To sustain a conviction for importation of a controlled substance it need not be proved that the defendant had knowledge of the particular drug involved, but only that he is importing some controlled substance.").[6]

Even though it is clear from the foregoing that, in a prosecution involving a controlled substance brought under Section 841(a), 846, 952(a) or 963, the government must prove the defendant knew the substance involved was a controlled substance, and even though a CSA is "treated ... as a controlled substance" for purposes of these statutes, the government denies that it must prove the defendant knew that XLR11 was a CSA. In support of this proposition, the government relies on cases from the Fourth and Fifth Circuits.

In *United States v. Desurra,* 865 F.2d 651 (5th Cir.1989), the Court ruled that "the defendant need not know that the drug he possesses is an analogue. It suffices that he know what drug he possesses, and that he possess it with the statutorily defined bad purpose." *Id.* at 653. The Court stated that the defendant's contrary position "misunderstands the intent requisite to convictions under 21 U.S.C. §§ 813, 841, 952, and 960," *id.,* but it did not explain the source of its understanding of the intent requirement of those statutes.

In particular, it did not attempt to square its ruling with Fifth Circuit precedents requiring the government to prove that the defendant knew the involved substance was controlled.[7]

In *United States v. McFadden,* 753 F.3d 432 (4th Cir.2014), the Court ruled that a proposed jury charge requiring the government to prove the defendant knew (or strongly suspected, or deliberately avoiding knowing) that the substances at issue were CSAs was incorrect. *Id.* at 443–44. The Court performed no independent analysis but stated only that the issue had been resolved by *United States v. Klecker,* 348 F.3d 69 (4th Cir.2003).

In *Klecker,* a conspiracy prosecution under Section 846, the Court addressed whether the definition of "CSA" was unconstitutionally vague as applied. As set forth in note 3, *supra,* the definitional section of the Analogue Act (Section 802(32)(A)) requires that the chemical structure of the substance be substantially similar to that of a controlled substance and that the physiological effects also be substantially similar to, or greater than, that of a controlled substance.[8] If these requirements are met, Section 813 treats the CSA as a controlled substance to the extent it is "intended for human consumption." The *Klecker* Court ruled that the definitional section was not unconstitutionally vague, due in part to the presence of the intent requirement in Section 813. 348 F.3d at 71–72. The Court declined to

---

6. Again, appellate courts consistently recognize this principle. *United States v. Hassan,* 578 F.3d 108, 124 (2nd Cir.2008); *United States v. Vargas–Castillo,* 329 F.3d 715, 719 (9th Cir.2003); *United States v. Moreno,* 185 F.3d 465, 471 (5th Cir.1999); *United States v. Garcia–Rosa,* 876 F.2d 209, 216 (1st Cir. 1989).

7. *E.g., United States v. Gonzalez,* 700 F.2d 196, 200 (5th Cir.1983); *United States v. Sud-*

*derth,* 681 F.2d 990, 994 (5th Cir.1982); *United States v. Rodriguez,* 588 F.2d 1003, 1010 (5th Cir.1979); *Restrepo–Granda,* 575 F.2d at 527; *Zapata,* 497 F.2d at 98 n. 7.

8. Regardless of the substance's actual physiological effects, the second requirement is met if the defendant represented or intended that the substance have such effects. 21 U.S.C. § 802(32)(A)(iii).

decide whether a defendant's actual awareness that the substance at issue was a CSA would of itself defeat a vagueness challenge, "because we conclude that the Analogue Act would not be constitutionally vague as applied to Foxy even with respect to a defendant who lacked actual notice." *Id.* at 72.

It seems clear that *Klecker* did not address, much less resolve, whether the government must prove the defendant's knowledge that the substance at issue was a CSA in order to obtain a conviction. *Klecker* dealt only with an antecedent constitutional challenge. A ruling that the defendant's knowledge is unnecessary to defeat a vagueness challenge based on Section 802(32)(A) is not, and cannot be, a ruling that knowledge is unnecessary to obtain a conviction under Section 846 after the hoops of Sections 802(32)(A) and 813 have been navigated.[9]

While the Court thus disagrees with the *McFadden* Court's reading of *Klecker*, *McFadden* has clearly announced that, to obtain a conviction, the government need not prove the defendant's knowledge that the substance at issue was a CSA. As with *Desurra*, however, the Fourth Circuit offered no explanation how such a result could be reached, and it did not acknowledge its precedents requiring the government to prove the defendant's knowledge that the substance involved is controlled.[10]

The government casually suggests the Eleventh Circuit has "apparent[ly] approv[ed]" the approach of the Fourth and

Fifth Circuits. (Doc. 56 at 3). In *United States v. Forbes*, 806 F.Supp. 232 (D.Colo. 1992), the Court announced, while addressing (and sustaining) a vagueness challenge, that "the definition of controlled substance analogue does not require any scienter—a defendant does not have to 'know' that a substance has a substantially similar chemical structure to an illegal drug." *Id.* at 238. In *United States v. Carlson*, 87 F.3d 440 (11th Cir.1996), the Court, in rejecting a vagueness challenge, "distinguish[ed]" *Forbes*, in the course of which it noted without comment the *Forbes* Court's statement concerning "the absence of a scienter requirement in the Analogue Act." *Id.* at 443 n. 2. The *Carlson* Court's mere acknowledgment of a statement in *Forbes* in no way denotes the Eleventh Circuit's "approval" of that proposition, and the government does not seriously argue otherwise. At any rate, *Forbes'* statement is correct as far as it goes: The knowledge requirement does not inhere in the "definition of [CSA]" (that is, in Section 802(32)(A)) but in the statutes establishing offenses (such as Sections 841(a), 846, 952(a) and 963).

The government properly points out that three appellate courts have reached conclusions opposite those of the Fourth and Fifth Circuits. *United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir.2013); *United States v. Turcotte*, 405 F.3d 515, 527 (7th Cir.2005); *United States v. Roberts*, 363 F.3d 118, 123 n. 1 (2nd Cir.2004). Of these, *Turcotte* is of primary interest,

---

**9.** The government appears to be unclear about this relationship between the statutes. It speaks of an "Analogue Act violation," demonstrated by reference to Sections 813 and 802(32)(A) only, (Doc. 56 at 2), but a defendant cannot be convicted of "violating" those provisions. Section 813 is simply a gateway provision, permitting prosecutions for violations of controlled substance statutes of those dealing with CSAs, and Section 802(32)(A) simply defines what constitutes a

CSA. Satisfying those two statutes does not establish a "violation" of anything; it merely opens the door to establishing a violation of other statutes.

**10.** *E.g., Ali,* 735 F.3d at 186–87; *United States v. Alerre,* 430 F.3d 681, 689 (4th Cir.2005); *United States v. Tran,* 18 F.3d 1132, 1137 (4th Cir.1994).

because it alone confronted and wrestled with the issue.

The defendant in *Turcotte* was charged and convicted under Sections 841(a) and 846. 405 F.3d at 519–21. The Court recognized that Section 813 "imposes criminal liability through the more general provisions of the [Controlled Substance Act], 18 U.S.C. § 841(a), which implicate a well-established scienter requirement," i.e., that "the defendants must know that the substance in question is a controlled substance." *Id.* at 525. The Court realized that a defendant cannot know that a CSA is a controlled substance because, by definition, a CSA is *not* a controlled substance. *Id.* at 526. Nor can a defendant "know conclusively *ex ante* " that a substance is a CSA, because the jury must find that the substance is a CSA. *Id.* at 526–27. However, eliminating a scienter requirement in CSA cases "would essentially mean that individuals deal in narcotics substitutes at their own risk" and would "also make the Analogue Provision more vulnerable to vagueness challenges." *Id.* at 527. The Court continued:

> In light of all these considerations, we feel that our precedents demand a showing that the defendant knew the substance in question was a controlled substance analogue. That is, the defendant must know that the substance at issue meets the definition of a controlled substance analogue set forth in § 802(32)(A): A defendant must know that the substance at issue has a chemical structure substantially similar to that of a controlled substance, and he or she must either know that it has similar physiological effects or intend or represent that it has such effects.

*Id.*

The Court agrees with the Seventh Circuit's conclusion but believes the analysis is more straightforward, with the result flowing necessarily from the structure of the statutory scheme enacted by Congress. As noted, a CSA is to "be treated . . . as a controlled substance," and it is to be so treated "for the purpose of any Federal law." 21 U.S.C. § 813. To be "treated . . . as a controlled substance" means to be treated the same as a controlled substance, and "any Federal law" includes Sections 841(a), 846, 952(a) and 963; thus, the courts must impose on a CSA prosecution under those statutes every requirement that applies to a controlled substance prosecution under those statutes. Eliminating the knowledge requirement, which the Fourth and Fifth Circuits did *sub silentio* (and which the Seventh Circuit apparently toyed with) is not an option given the statutory language. On its face, Section 813 permits no exception to the express requirement to treat a CSA as a controlled substance.

The government protests that requiring it to prove the defendant's knowledge that XLR11 is a CSA runs counter to the "purpose" of the Analogue Act, which it defines as to "deter and criminalize any drugs of abuse that resemble controlled substances, without requiring prior identification or scheduling by DEA or Congress." (Doc. 56 at 4–5). The Analogue Act does accomplish this purpose; that its deterrence value might be greater had Congress exempted CSAs from the knowledge requirement applicable to controlled substance offenses provides no grounds for reading such an exception into a facially exceptionless statute. "[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004).[11]

---

**11.** In a similar vein, the government argues that drug laws are *malum in se* and that a

It is not as though Congress was unaware, when it enacted the Analogue Act in 1986, that controlled substance offenses require proof the defendant knew the substance was controlled; that principle was widely understood and applied.[12] "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). In such a situation, "if Congress had intended [to counter that interpretation], it presumably would have explicitly said so." *In re: Witcher,* 702 F.3d 619, 623 (11th Cir.2012). Yet Congress did not explicitly say that CSAs are exempt from the knowledge requirement of the controlled substance statutes; on the contrary, it insisted that CSAs be treated the same as controlled substances, without exception, under all federal laws.

To say that the government must prove the defendant's knowledge that the substance at issue is a CSA does not resolve how the government may meet its burden. The *Turcotte* Court "prescribe[d] that, in such cases, if the scienter requirement is met with regard to the second part of the analogue definition (knowledge or representation of similar physiological effects), the jury is permitted—but not required—to infer that the defendant also had knowl-

edge of the relevant chemical similarities." 405 F.3d at 527. The Court agrees this is a reasonable, and thus permissible, inference, since a likely reason for believing, intending or representing that a substance has physiological effects substantially similar to those of a controlled substance is an understanding that the substance has a chemical structure substantially similar to the controlled substance.

For the reasons set forth above, the government's motion for a pretrial ruling on scienter requirement is **granted.** In order to obtain a conviction, the government will be required to prove beyond a reasonable doubt that the defendant knew that XLR11 has a chemical structure substantially similar to that of a controlled substance and that he knew (or intended or represented) that XLR11 has stimulant, depressant or hallucinogenic effects substantially similar to, or greater than, those of a controlled substance. The government may rely on the permissible inference described in the preceding paragraph if it establishes the predicate of that inference. To the extent the government seeks additional or other relief, its motion is **denied.**[13]

---

knowledge requirement is appropriate only for laws that are *malum prohibitum.* (Doc. 56 at 8–9). Assuming without deciding that this is correct, the knowledge requirement is an established staple of federal controlled substance jurisprudence, so any breach of the *malum in se/malum prohibitum* dichotomy has already occurred and is not a product of the Court's ruling.

**12.** *E.g., United States v. Kairouz,* 751 F.2d 467, 469 (1st Cir.1985); *Gonzalez,* 700 F.2d at

200; *Lewis,* 676 F.2d at 512; *United States v. Morales,* 577 F.2d 769, 776 (2nd Cir.1978); *United States v. Jewell,* 532 F.2d 697, 698 (9th Cir.1976); *Sudderth,* 681 F.2d at 994; *Rodriguez,* 588 F.2d at 1010 (5th Cir.1979); *Restrepo–Granda,* 575 F.2d at 527; *Zapata,* 497 F.2d at 98 n. 7.

**13.** This includes the government's request that the defendant be precluded from offering testimony, argument or comment concerning his knowledge or belief that his conduct was

lawful. (Doc. 72 at 8). Because this request was first made in a reply brief, it is not properly before the Court at this time.